*1178 OPINION.
Smith:
The Commissioner having determined an overassessment for each of the years 1918 and 1919, the Board is without jurisdiction of so much of the appeal as pertains thereto. Appeal of R. P. Hazzard Co., 4 B. T. A. 150, and Appeal of Cornelius Cotton Mills, 4 B. T. A. 255.
The issues raised with respect to the year 1920 are (1) whether petitioner’s original issue of stock was issued in exchange for the *1179 stock of its predecessor or whether it was issued in exchange for the assets of its predecesor; and (2) what amount, if any, should be included in petitioner’s invested capital for income-tax purposes as representing the value of intangibles acquired by it upon the reorganization of its predecessor, the Stromberg Electric Co., an Illinois corporation.
The petitioner contends that the reorganization was predicated upon and consummated through an exchange of stock for stock and that there should be included in its invested capital the sum of $198,360.41 as representing the value of intangibles as at the date of the reorganization of its predecessor. The respondent contends that the reorganization was accomplished by means of an exchange of stock for assets and that no amount should be included in petitioner’s invested capital on account of intangibles in the absence of proof of any actual cash value at the time it was paid in for stock.
In support of its contention that the reorganization was effected through an exchange of stock for stock the petitioner relies mainly on the proposed plan of reorganization that was approved by the stockholders of its predecessor as representing the intention of the parties to the reorganization. Counsel for the petitioner argue that the directors of the two corporations acted pursuant to and in accordance with the terms and intent of that plan; that the steps leading up to the organization of petitioner should be considered as well as • the acts whereby the transfer took place; that if such acts are considered as a whole it becomes apparent that the ideas and intentions of all parties to the reorganization were strictly carried out and that the reasoning of the court in United States v. Board, 14 Fed. (2d) 459, is applicable here.
While it would seem that the stockholders of the predecessor corporation had in mind an exchange of the stock then held by them for stock in a new corporation to be organized, it should be borne in mind that the proposed plan of reorganization was accepted by the stockholders prior to the incorporation of the petitioner. It would also seem that as far as the stockholders of the predecessor were concerned the reorganization resulted in the receipt by them of stock in a new corporation in place of the stock formerly owned by them, but we can not be guided solely by such results. The acts of the two corporations are the determining factors.
The predecessor corporation by appropriate act of its directors made an offer to the petitioner to sell its assets for the petitioner’s stock. This offer was accepted by the petitioner through the appropriate act of its directors. Herein the instant case differs from the case of United States v. Board, supra, which was relied on by the *1180 petitioner. In that case the court had for its consideration an agreement entered into between the Kentucky Wagon Manufacturing Co. and the stockholders of the Dixie Motor Car Co. The court pointed out that the stockholders had no authority to act for the Dixie Motor Car Co. and that they could transfer only the stock which they themselves owned. Consequently, in order to make the agreement enforceable, the court held that there had been an exchange of stock for stock. In the case at bar it is noted also that immediately after the reorganization the petitioner set up in its books of account, as assets and liabilities, the assets and liabilities of its predecessor and it does not appear that any of the stock of the predecessor corporation was set up in its books.
In view of the foregoing we are of the opinion that the reorganization was effected through the sale of the assets of the predecessor corporation to the petitioner, it being immaterial that the stock received in payment therefor was distributed in accordance with a certain schedule which had received the prior approval of stockholders of the old corporation. Section 326(a)(4) of the Revenue Act of 1918 provides that there may be included in invested capital—
Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest.
The total amount of petitioner’s stock outstanding on March 3, 1917, was $325,000. Consequently, the largest amount that may be included in petitioner’s invested capital on account of intangibles acquired from its predecessor upon reorganization will be one-fourth of that amount, namely, $81,250,
Relative to the second issue the petitioner contends that if the Board should find that there was an exchange of assets for stock it should be allowed to include in invested capital the sum of $81,250 on account of intangibles. In support of this contention each of three witnesses testified that in his opinion there had been invested in the business from the date of its first organization in 1903, to the end of 1913, the sum of $300,000; that at the end of 1913 the tangible assets of the predecessor corporation were worth $100,000; and that the intangible assets, including patents, patent applications and good will, were worth $200,000. One of these witnesses, William P. Martin, had had experience in manufacturing enterprises and for some time previous to his becoming interested in the petitioner had investigated a great many business concerns from a standpoint of personal investment. He testified that his opinion was based on a thorough personal investigation of the predecessor corporation; that he was satisfied that the intangible assets were worth $200,000, *1181 and that the issuance of $277,700 par value of stock for all the assets, both tangible and intangible, was very conservative. Walter Clyde Jones, another of the witnesses, was a stockholder and a director of the predecessor corporation and had served for many years as its patent attorney. He testified that, based on his knowledge of the old corporation and the experience gained by him in the conduct of a large patent practice, the intangibles of the predecessor corporation were worth $200,000. The other witness, Walter D. Steele, an engineer and former stockholder of the old corporation, testified that in his opinion, based on his knowledge of the conduct of the business of the predecessor corporation, its intangibles were worth $200,000. The petitioner also points out that, eliminating the earnings of the petitioner for the year 1914 as being subnormal, the earnings for the five years, 1915 to 1919, inclusive, averaged $46,626.39 on average tangible assets of $209,263.65, and that capitalizing the average annual profits on a basis of 20 per cent after deducting a return of 8 per cent on average tangible assets would give a value to intangibles of $149,426.50.
Counsel for the respondent argues that the increase in earnings of the petitioner over those of its predecessor were due mainly to the injection of new capital and management into the business, and that, if the stock issued in exchange for the assets of the old corporation was worth par, after deducting therefrom the value given by the petitioner to the tangible assets, amounting to $132,013.85, plus liabilities assumed, which amounted to $19,415.53, the value of the intangibles would be $126,270.62.
He points out that the petitioner admitted that the predecessor corporation made improper entries in the development and patent accounts set up in its books; that the earnings of the predecessor corporation were not sufficient to provide even a reasonable return on tangibles; that no dividend was paid on either the common stock or the third preferred stock during the years 1914, 1915, and 1916, and that the dividend paid in 1917 on those classes of stock amounted to only 7% per cent on common stock and 3 per cent on third preferred stock. In view of the foregoing, he argues that, having in mind the conditions which obtained prior to 1914, the stock was not worth par and furthermore that no acceptable method has been presented whereby the value of the intangibles may be ascertained.
We are convinced, however, that the patents, patent applications, and good will of the predecessor corporation were worth a substantial sum at the time they were acquired by the petitioner. The testimony adduced at the hearing shows that the resources of the business prior to the time it was acquired by the petitioner were expended in developing and perfecting time-recording mechanisms and in developing a sales field for the perfected devices. During the year 1913 *1182 the predecessor corporation was in a position, as far as perfection of product and sales field were concerned, to take up a manufacturing program on a large scale, but due to lack of capital and management it was unable to convert potentialities into actualities. It enjoyed patent protection to such an extent that serious competition existed only as a remote possibility.
That the business had reached a point where it was capable of making material progress is indicated by the fact that after one year’s operation with the investment of only $25,000 additional capital the petitioner began to make comparatively large profits. It is reasonable to assume that the petitioner required a year to build up and perfect its manufacturing processes. If we disregard the earnings of the year 1914 as a measure of the earning power of the business and capitalize the earnings of the petitioner’s first representative year, namely, 1915, on a 10 and 20 per cent basis, an intangible valuation of $84,590.85 is indicated.
We have indicated in other cases that opinion evidence is to be considered with caution. Nevertheless, the testimony of William P. Martin, the organizer and moving spirit of the petitioner, is impressive. From his testimony it appears that he has had considerable experience in manufacturing enterprises; that for months prior to the organization of the petitioner he had examined and investigated the business and products of its predecessor; that he was induced to become interested in the business by reason of its possibilities; that the tangible assets of the predecessor were of minor importance from a manufacturing standpoint, and that the chief value of the business lay in its intangibles.
It has been pointed out that the petitioner can not include in invested capital on account of intangibles more than $81,250, and, in view of all the evidence submitted, we are of the opinion that the value of the intangibles received by the petitioner in exchange for its stock was at least equal to that sum.
Judgment will he entered on 15 days’ notice, under Bule 50.
Considered by Littleton, Trussell, and Love.